SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00046-IM-01** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **OSCAR ALFREDO RIVAS-MENDEZ,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 24 months' imprisonment, to be followed by a three-year term of supervised release.

The defendant was a fentanyl dealer involved in selling an incredibly addictive, destructive, and deadly poison within the community. Not only was he selling fentanyl, but the defendant also comes before the Court with three outstanding arrest warrants for prior drug dealing cases that are pending in San Francisco, California.

Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, and the defendant's personal history and characteristics the government

**Government's Sentencing Memorandum**                                                    **Page 1**

believes the requested sentence is both reasonable and justified. The defendant will also very likely be deported to Honduras as a result of his conviction.

## A.    Summary of Proceedings.

The defendant and his co-defendant and girlfriend Ms. Sanchez-Estrada were both arrested on January 29, 2025, by the Westside Interagency Narcotics (WIN) Team and Federal Bureau of Investigation (FBI) in connection with a drug overdose investigation. On January 30, 2025, a criminal complaint was filed. On February 11, 2025, defendant was indicted.

On April 2, 2026, defendant pled guilty to Count 1 of the Indictment which charged him with engaging in a Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The maximum sentence the Court may impose is a term of 40 years imprisonment, a fine of $5,000,000, and at least four years of supervised release. There is also a potential mandatory minimum sentence of five years' imprisonment. The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed. The government has no objection to the PSR and believes the facts underlying the defendant's count of conviction (PSR ¶¶ 21 - 26), Sentencing Guideline calculations (PSR ¶¶ 31 - 40), and prior drug dealing arrests (PSR ¶¶ 46 - 48) are accurately outlined in both the PSR and plea agreement. In his plea agreement defendant admitted that:

> At trial the government could prove that defendant conspired with others to distribute and possess with intent to distribute fentanyl here within the District of Oregon. As part of this conspiracy, on or about January 29, 2025, within the District of Oregon, law enforcement investigators searched a vehicle that the defendant used to deliver fentanyl and they seized approximately 26.3 grams of powdered fentanyl and 41.9 grams of blue counterfeit M30 pills manufactured with fentanyl. Defendant

**Government's Sentencing Memorandum**                                        **Page 2**

admitted to investigators that he bought and then sold fentanyl – in both powder and pill form – and that he had approximately eight (8) customers that he regularly supplied with fentanyl. Trained drug investigators would testify that the amount of fentanyl seized indicated it was possessed for purposes of further distribution. Fentanyl is a Schedule II controlled substance.                .

Plea Agreement ¶ 6.

This investigation began on December 13, 2024, when an adult female died from an apparent drug overdose.[1] At the scene, Investigators found fentanyl powder, methamphetamine, and counterfeit M30 pills manufactured with fentanyl. From a review of the victim's phone Investigators identified an individual who sold fentanyl to the victim, this person is referred to as the Level 1 distributor. The Level 1 distributor was contacted by law enforcement, admitted to selling fentanyl to the victim, and provided a number to the Investigators that he used to order fentanyl. That phone number led to the case against the defendant.

In early January 2025, Investigators had the Level 1 distributor call and reorder fentanyl from his source of supply, who was the defendant, and at the time of the scheduled delivery both the defendant and his girlfriend and co-defendant showed up to complete the delivery. The

---

[1]  It was later determined that the victim's cause of death was a result of both methamphetamine and fentanyl. The victim had additional contributing health factors as well. Because the Medical Examiner concluded that the victim's death resulted from a mixed toxicology involving fentanyl and methamphetamine, without additional evidence, in this specific case the government could not prove the victim's death resulted from the use of the fentanyl and thus could not prove the "death results" sentencing enhancement outlined in 21 U.S.C. § 841(b). *Burrage v. United States*, 571 U.S. 204, 210, 218-19 (2014) (to prove the "'death results' enhancement" from the use of a controlled substance the government must show either that the controlled substance was the "but-for" cause of death or that the controlled substance was "independently sufficient" to cause the death); *see also*, *Taking the Fear Out of Prosecuting Drug Overdose Cases*, DOJ J. FED. L & PRAC., No. 1, pp. 62-71, March 2024 (https://www.justice.gov/usao/resources/journal-of-federal-law-and-practice).

**Government's Sentencing Memorandum**                                    **Page 3**

Level 1 distributor told the Investigators that the defendant was the one he bought the fentanyl from and that his girlfriend had come with him on prior deliveries as well.

With this information, Investigators applied for and received federal search warrants for the residence associated with the defendant, as well as their two vehicles. On January 29, 2025, Investigators served those search warrants. Both defendants were also arrested. In one of the vehicles Investigators located approximately 26 grams of fentanyl powder, 41 grams of counterfeit blue M30 pills manufactured with fentanyl, and a scale. Inside the residence they found $8,421 in cash, a drug ledger, and money remitter receipts.

As a result of their investigation it was clear to the Investigators that while both defendants had involvement in the distribution of fentanyl, the defendant was the main person responsible for the criminal activity. After he was arrested the defendant was advised of his constitutional *Miranda* rights in Spanish, acknowledged understanding his rights, and was willing to talk with Investigators. Investigators interviewed the defendant and he admitted that he sold fentanyl in pill and powdered form. The defendant said he has eight (8) customers that he sells fentanyl to and further stated he hasn't sold much powdered fentanyl recently but he sells the blue M30 pills for $1 each. The defendant also admitted he was selling powdered fentanyl in December of 2024.

**B.    Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting

**Government's Sentencing Memorandum**                                                    **Page 4**

*Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

### Base Offense

Based upon the amount of fentanyl seized in the investigation, defendant's initial Base Offense Level is 24, pursuant to USSG § 1B1.3 and 2D1.1(a). PSR ¶ 31, Plea Agreement ¶ 8. This offense level is not in dispute.

### Safety Valve

Because the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and USSG § 2D1.1(b)(18), the government and U.S. Probation Office are asking the Court to grant the defendant a two-level downward adjustment. PSR ¶ 32, Plea Agreement ¶ 9.

### Zero Point Offender

Because the defendant qualifies as a "Zero Point Offender," pursuant to USSG § 4C1.1, the parties will recommend a two-level downward adjustment in defendant's Sentencing Guidelines range. PSR ¶ 37, Plea Agreement ¶ 10.

### Acceptance of Responsibility

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in defendant's offense level. PSR ¶¶ 38 - 39, Plea Agreement ¶ 11.

The defendant's initial Adjusted Offense Level is 17. With a Criminal History Category of I, defendant's initial advisory sentencing guideline range is 24 to 30 months' imprisonment.

Defendant has been in federal custody since his arrest in Portland on January 29, 2025.

///

**Government's Sentencing Memorandum**                                    **Page 5**

C.      **Government's Recommended Sentence.**

Based upon the nature of the case, pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 24 months' imprisonment, to be followed by a three-year term of supervised release.  Given the nature of this case coupled with his three outstanding arrest warrants in California – as a result of three separate drug dealing arrests – the government does not believe a variance from the defendant's advisory sentencing guideline range is warranted.

Fentanyl is an extremely addictive, destructive, and deadly poison that has been devastating our community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death.  *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC Newsroom (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* Get Smart About Drugs (August 17, 2024).  In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses.  *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023).  Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths.  *Fentanyl by*

**Government's Sentencing Memorandum**                                              **Page 6**

*State Report*, Families Against Fentanyl (Feb. 4, 2023).  In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths.  Oregon Health Authority Oregon Department of Education Fentanyl & Opioid Response Toolkit for Schools (January 2024).  In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl.  *Oregon Overdose Prevention Dashboard*, Oregon Health Authority (May 1, 2025).  In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]."  *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon.  *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WatchBlog: Following the Federal Dollar, U.S. Government Accountability Office (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* Oregon Health Authority (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* National Center for Health Statistics, U.S. Centers for Disease Control and Prevention (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those

**Government's Sentencing Memorandum**                                             **Page 7**

deaths, in 2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

The defendant was selling an extremely deadly poison. We have no doubt that the defendant came to the United States seeking more opportunities than he thought were available to him in Honduras. *See* PSR ¶ 56. However, that experience does not justify or excuse the harm he in turn inflicted upon others. As his history shows, the defendant abused the opportunities afforded to people living in the United States to peddle poison for profit.

The defendant reports that he first came to the United States sometime in 2023. PSR ¶ 56. In October 2023, the defendant was arrested in San Francisco, California for drug dealing. PSR ¶ 46. When he was arrested he was caught with small amounts of fentanyl and cocaine which were intended for purposes of further distribution. *Id.* He was given diversion, which was eventually terminated in December 2023, and in July 2024, a warrant was issued for his arrest. *Id.*

In November 2023, the defendant was again arrested in San Francisco, California for drug dealing. PSR ¶ 47. Once again he was caught with small amounts of fentanyl and cocaine that he was selling. *Id.* Once again, in July 2024, a warrant was issued for his arrest.

In January 2024, the defendant was arrested a third time in San Francisco, California for drug dealing. PSR ¶ 48. The defendant was caught with methamphetamine, cocaine, and heroin. *Id.* Again, in July 2024, a warrant was issued for his arrest. At some point following his last arrest the defendant made the choice to leave California and try his luck dealing fentanyl in Oregon. As this case shows, that was another poor decision on his part.

///

**Government's Sentencing Memorandum**                                                    **Page 8**

The government does not believe the defendant was a large-volume fentanyl dealer or the head of a drug dealing organization, but nevertheless, every time he sold fentanyl he was selling a poison that kills people. At a minimum every time he sold fentanyl he perpetuated the cycle of addiction that the users are caught within. Even in very small amounts, fentanyl is a deadly poison and this defendant distributed that poison for the sole purpose of making money and without any regard for the harm he was causing others. Prior arrests did nothing to deter the defendant from dealing drugs; all he seems to have learned from his three prior arrests was to go somewhere else to deal drugs. The defendant simply does not get or care about the gravity of the harm he was causing to the community.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 24 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

///

///

///

**Government's Sentencing Memorandum**                                    **Page 9**

At the time of sentencing we will ask the Court to dismiss Count 2.

There is an appeal waiver.

Dated: July 7, 2026.                                    Respectfully submitted,

                                                       SCOTT E. BRADFORD
                                                       United States Attorney


                                                       /s/ *Scott Kerin*
                                                       _____

                                                       SCOTT M. KERIN, OSB # 965128
                                                       Assistant United States Attorney


**Government's Sentencing Memorandum**                              **Page 10**